**ANASTOS, Estate of, In re.**

Probate Court, Summit County.

No. 81-43317-161. Decided June 15, 1944.

No attorneys listed.

## OPINION

By MAY, J.

This matter came on to be heard on exceptions filed to the inventory by Gust Anagnost, the surviving partner of the decedent, in the conducting of a business on East Market Street, Akron, Summit County, Ohio.

There were three separate grounds to which exceptions were taken:

First. Certain chattels as listed in the inventory were claimed by the exceptor as his individual property, and that the decedent had no interest therein.

Second. That the appraisers had appraised the good will of said business at a grossly excessive and fantastic value.

Third. That two of the appraisers, Charles H. Clupper and Dave Goldberg, were biased and prejudiced against the surviving partner.

The evidence disclosed that the partnership was formed in August, 1940; that the surviving partner, Gust Anagnost, had certain fixtures which were moved from a former business which he conducted in South Akron, which he claimed was his individual property and were brought in to the place of business where the partnership was conducted and used in the business up to and until the death of the decedent; that the decedent contributed Seven Hundred Fifty Dollars ($750.00) in cash when the partnership was formed.

The evidence as to the exceptor's investment is disputed. His testimony was to the fact that he contributed Seven Hundred Fifty Dollars ($750.00) in cash and loaned the fixtures to the partnership and retained title thereto. Contention of the representative of the estate was that the fixtures

were his share of the contribution to the business. The evidence also disclosed that the exceptor did, at the time of taking inventory, claim title to the articles as listed in the exceptions filed herein.

The appraisers were duly bound to appraise the fixtures, as these specific chattels were commingled with the other partnership assets. The appraisers appointed do not have any judicial powers in determining ownership that is in dispute or commingled with the assets of the decedent. The question of ownership is solely in the jurisdiction of the court upon exceptions being filed.

The evidence of the exceptor as to his ownership prior to the forming of this partnership is not disputed, but as to his retaining ownership of these chattels in the partnership is disputed.

The records of the partnership are silent as to any reference to his retaining ownership or being a part of the partnership assets. There was no record of any rentals being charged for the use in the partnership, although they were listed for intangible taxes and insured as partnership assets.

The court must hold that in the absence of any partnership record, as to the surviving partner's claim, and his own declarations in reference to taxes and insurance, that he is now estopped from claiming any interest therein. Exceptions to this ground overruled.

The court now considering the second ground that the good will of this partnership appraised at Twelve Thosuand Dollars ($12,000.00) was excessive.

Good will is a very flexible and intangible thing. It seems that the more research is made, the more confused one's mind becomes. There is no set rule of law which can be applied to any one case, but varies in each type of business. In all cases good will must be established on the nature of the business, the name as associated with the public; in partnership, the individuals personality and character as it affects the public's confidence and good will towards the business; location, where the business is located in relation to the nature of the business, whether partnership owns or leases the property in which the business is being operated; if leased, the terms of the lease must be considered, net income of business, etc.

This particular partnership was conducted as a luncheon room along with the sale of groceries, beverages and notions, and was operated on East Market Street opposite the Akron City Hospital. The evidence disclosed most of the business was done with the people visiting at the Akron City Hospital

and was largely transient patronage. The property was leased by the partners and had, at the time of the decedent's death, one year and eight months to run with no renewal privileges. The books disclosed that the gross profit on an average was approximately $37,000.00 or more per year with a net profit of approximately $6719.50 per year.

The court holds that the name under which said partnership was conducted was of no intrinsic value. The value in determining the good will in this case depended to a certain extent upon the individuals and their attitude towards the consumers who came into the store. The location was the principal asset and basis in this case for determining the value of the good will. The lease must also be considered, especially in reference to the time that still remained unexpired at the time of the death of the decedent. The court must also consider that the rights of possession at the expiration of the lease would revert to the owner, unless a new lease could be negotiated. This is an uncertainty, and surely a court cannot anticipate a renewal any more than a denial of same by the lessor. There is however a reasonable certainty of the continuing income during the remainder of the lease, as the books of the partnership disclosed was steadily increasing.

There is also another factor which must be considered and which does vary, and that is the increase in cost of merchandise and expenses which can be reflected in the net profit and must be considered.

The court cannot consider assessing the value of the good will solely upon the gross income, but must consider the good will upon the net income, the location, the public's attitude toward the partnership, the nature of the business in connection with the location, the reason for the consumers patronizing the place of business and the length of lease.

The decedent's estate, therefore, should be entitled to some consideration for the efforts of the decedent during his lifetime in establishing the good will in this business in conjunction with his partner, the exceptor herein.

The court holds that the appraisers erred in the method of computation and assessed the value of the good will too high.

The court, therefore, reduces the good will, as set up in Schedule A of the inventory and appraisement, from Twelve Thousand Dollars ($12,000.00) to Eight Thousand Five Hundred Dollars ($8,500.00).

As to the third ground of exceptions, I do not believe the

evidence disclosed any particular bias or prejudice on the part of the appraisers. It is true that one of the appraisers was associated with the attorney representing the administrator, but in the testimony of the appraisers, there was no indication that he at any time during the appraisement tried to influence the minds of the other two appraisers in arriving at their conclusions on the value as set forth in the inventory of the assets in this estate.

The court, therefore, overrules this ground of the exceptions.

A Journal Entry may be drawn in conformity to the court's opinion rendered herein and exceptions allowed.